**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER ALLEN SOKOLOWSKI, | ) | CASE NO. 1:22-CV-01140-CEH |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| v. | ) | |
| | ) | **MEMORANDUM ORDER & OPINION** |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant, | ) | |

### I.      Introduction

Plaintiff, Christopher Allen Sokolowski ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI"), Period of Disability ("POD"), and Disability Insurance Benefits ("DIB"). This matter is before the Court by consent of the parties under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

### II.      Procedural History

Claimant filed applications for SSI, POD, and DIB on February 24, 2020, alleging a disability onset date of October 4, 2018. (ECF No. 7, PageID #: 49). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 23, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). The ALJ issued a written decision finding Claimant was not disabled on March 17, 2021. (*Id.* at PageID

1

#: 46). The ALJ's decision became final on June 22, 2022, when the Appeals Council adopted the

ALJ's disability determination. (*Id.* at PageID #: 27–36).

Claimant filed a complaint to challenge the Commissioner's final decision in the U.S.

District Court for the Northern District of Ohio on June 28, 2022. (ECF No. 1). The parties have

completed briefing in this case. (ECF Nos. 10, 12, 14). Claimant asserts the following assignments

of error:

> (1) The ALJ and Appeals Council erred when they failed to adopt the limitations set forth by the treating sources and incorporate the stated limitations into the RFC, as contrary to their findings, these limitations were supported by and consistent with the medical record.
>
> (2) The ALJ and Appeals Council found at Steps Four and Five that Sokolowski could perform work at the light level of exertion with additional non-exertional limitations. This finding lacks substantial evidence as the RFCs failed to consider the effect of the combination of Sokolowski's severe impairments and the related symptoms on his ability to engage in substantial gainful activity on a full-time and sustained basis.

(ECF No. 10, PageID #: 561).

## III.    Background

## A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant testified at the hearing that he is unable to work as his body cannot handle it anymore. He noted that he cannot even kick a soccer ball. He does physical therapy exercises at home. He is taking medications for the pain. He noted that the medications help a little bit. He noted that taking a shower is difficult because of the standing. He noted difficulty with anxiety and staying focused. He does not like to be out in public or around others. He cooks, but sometimes forgets that he is cooking and will burn food. (See Hearing Testimony). The claimant completed a Function Report noting that his anxiety keeps him from being near people. He noted that he had a fractured spine, which causes daily back pain. During the day, he watches TV and plays video games. He takes care of his

son. He takes care of his personal care, but noted that he does not
perform them as often as he should. He prepares his own meals. He
noted that he needs reminders to take medications. He completes
laundry. He can drive a car and can go out alone. (See 3E).

(ECF No. 7, PageID #: 54).

## B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

In September of 2018, the claimant presented with a chief complaint
of back pain. He stated that about 2 years ago he had a fall at home
and was diagnosed with the compression fracture at the T9 spine.
Since then he has had pain in the mid back area with occasional
radiation to the low back. He also complained of generalized body
pain and low back pain that occasionally radiates to the left leg. He
had been on multiple different medications including
cyclabenzaprine, meloxicarn, napraxen, ibuprofen, without
significant pain relief with these. He saw a spine surgeon that did
not recommend any intervention at that time. He reported poor sleep
pattern, low level of energy, depressed mood, and stated that he had
been smoking cigarettes around 1 pack a day for a long time. He
complained of lack of energy and generalized pain that prevents him
from taking care of his 9-year-old son. He denied having weakness
and lower extremity, bowel or bladder dysfunction. (1F/4). On
examination, he was well-developed, well-nourished, and in no
acute distress. He had multiple tender points on musculoskeletal
exam along the cervical, thoracic, and lumbar spines. Straight leg
raise test and Faber test were both negative. (1F/5).

An x-ray of the lumbar spine was taken in September of 2018. The
lumbar vertebrae demonstrated normal vertebral body height and
alignment with no definite evidence of fracture or subluxation. The
intervertebral disc spaces are maintained. Spondylolysis of the L5 is
unchanged since prior study. There is no dynamic instability. (1F/6).

The claimant indicated in January of 2020 feeling on edge a lot,
trouble with focus, irritability, and sleep disturbances. He reported
feeling nervous around people, due to fear of judgement toward him.
In addition, he reported episodes of fear with gastrointestinal upset,
worries of "going crazy," and feelings of unreality. He admitted that
he tends to avoid these situations that might bring on these episodes.
He also acknowledged experiencing sadness, a lack of motivation,
weight gain, and guilt. (2F/18). On mental status exam, his
appearance was well groomed. Demeanor was within normal limits.

3

Behavior/motor was within normal limits. Cognition was within normal limits. Memory was within normal limits. Insight was fair. Judgment was within normal limits. Intelligence estimate was average. Concentration was within normal limits. Speech was within normal limits. Mood was within normal limits. He had a full range of affect. Thought content was within normal limits. Thought process was within normal limits. He denied suicidal or homicidal ideation. (2F/20).

A physical exam was recorded in January of 2020, noting that the claimant was well-appearing and in no acute distress. On musculoskeletal exam, bilateral upper and lower extremity strength was normal and symmetric. No atrophy or tone abnormalities were noted. (7F/5). Straight leg raise test was negative. Peripheral joint range of motion was full and pain free without obvious instability or laxity in all four extremities. There were no deformities, edema, or skin discoloration. His gait was noted to be antalgic. Bilateral upper and lower extremities coordination was intact. Muscle strength reflexes were psychologic and symmetric. Plantar response was downgoing. There was no loss of sensation noted. (7F/6).

An MRI of the lumbar spine was performed on January 21, 2020. It noted the following: at T2- L1: There is no significant central canal or neural foraminal stenosis. L1-2: There is no significant central canal or neural foraminal stenosis. L2-3: There is no significant central canal or neural foraminal stenosis. L3-4: There is no significant central canal or neural foraminal stenosis. L4-5: There is no significant central canal or neural foraminal stenosis. L5-S1: Minimal disc bulging does not narrow the central canal. There is at most minimal neural foraminal encroachment. There is very subtle curvilinear hyperintensity on T2 weighted imaging along the left lateral/intraforaminal margin of the disc suggestive of an annular fissure. The prevertebral and posterior paraspinous soft tissues are unremarkable. The impression was minimal degenerative changes of L5-S1. (8F/1).

A mental status exam was recorded in June of 2020, noting the claimant's appearance was well groomed. Eye contact was avoidant. Motor activity was normal. Demeanor was cooperative. Speech was clear. Mood was depressed. Affect was flat. Thought content showed no delusions. No hallucinations were reported. Thought processes were logical. He was oriented to person, place, time, and situation. Memory was normal. Intelligence estimate was average. Attention/concentration was normal. Fund of knowledge was adequate. Vocabulary was age appropriate. Reasoning ability was intact. Ability to abstract was intact. Insight was good. (3F/22). His

4

judgment was good and his impulse control was normal (3F/23).

The claimant attended an internal medicine consultative examination in September of 2020. On exam, his gait was normal and steady. He does not need an assistive device for ambulation. The claimant appears stable at station. The claimant's hearing appears to be adequate for normal conversation. Examination of the hands reveals no tenderness, redness, warmth or swelling. Examination of evidence of the cervical spine reveals no tenderness over the spinous process. Examination of the dorsolumbar spine revealed normal curvature. There was no evidence of paravertebral muscle spasm. There was tenderness to percussion of the dorsolumbar spinous processes. Straight leg raise test was negative on both sides supine and seated. There was no hip joint tenderness. There was no redness, warmth, swelling, or crepitus. Cranial nerves II-XII were intact. (See 5F).

X-rays of the lumbar spine were taken during the consultative examination in September of 2020. They showed Mild dextrocurvature at the thoracolumbar junction. No fracture or subluxation. Transitional L5 vertebral body. Mild intervertebral disc space narrowing at level of L5-51. Intervertebral disc spaces of the upper levels are preserved. Posterior elements are grossly intact. No osseous destructive lesion is seen. Moderate colonic stool burden was noted. The impression noted mild intervertebral disc space narrowing at level of L5-S1. (6F/2).

A review of symptoms in October of 2020 noted no depressive feelings, no mood swings, no irritability, no racing thoughts, no anxiety, and no panic attacks. (13F/13). A mental status exam was noted to be generally normal at that time. (13F/14).

The claimant presented for follow-up in January of 2021. It was noted that past medications did not significantly reduce his pain it was noted that he does not need an assistive device walking, and does not need assistance walking, sitting, or standing. (9F/1). On exam, he was well developed, well nourished, well hydrated and no acute distress. Musculoskeletal exam showed no joint swelling, and normal movements of all extremities. Gait and station were normal. Digits and nails were normal without clubbing or cyanosis. Range of motion was abnormal. (decreased range of motion with flexion and extension of the lower spine). Judgment and insight were intact. Mood and affect were anxious and flat. He was alert and oriented. Recent and remote memory were normal. There was no cervical lymphadenopathy. (9F/3). In February of 2021, it was noted that the claimant was markedly obese but in no acute distress. He had limited

flexion. He had painless motion in both hips. His strength was intact in the lower extremities. (10F/1). He was recommended a nonsurgical approach to include exercise, weight reduction, and smoking cessation. (10F/2).

(*Id.* at PageID #: 54–57).

## C.  Opinion Evidence at Issue

The opinions of Mr. Bret Kalina, Mr. Tom Szakal, P.T., and the state agency medical consultants are at issue on appeal. The ALJ reviewed the opinions of Mr. Kalina and the state agency consultants. (*See id.* at PageID #: 57–58). However, only the Appeals Council reviewed Mr. Szakal's opinion as it was submitted after the administrative hearing. (*See id.* at PageID #: 30–31).[1]

The ALJ summarized Mr. Kalina's opinion:

> He completed a mental impairment questionnaire noting that the claimant is unable to meet competitive standards in most of the mental functioning categories, and checking boxes in "no useful ability to function" in a variety of categories. He noted that the claimant would be absent from work 3-4 days per week, and off-task 75% of the workday. (See 12F).

(*Id.* at PageID #: 58). The ALJ then summarized the findings of the state agency consultants:

> They opined that the claimant would be capable of a less than medium exertional level (See 4A and 8A). . . . Mentally, they opined that the claimant can interact with others in a work setting on a limited, brief and superficial basis. He can adapt to infrequent changes in routine that are introduced gradually, in a setting without high production goals or quotas. (See 4A and 8A).

(*Id.* at PageID #: 57).

---

[1] Claimant submitted the opinion on March 12, 2021, after the administrative hearing, but before the ALJ issued its decision. (ECF No. 7, PageID #: 30). The AC noted that the ALJ's failure to discuss the opinion or explain their reason for refusing to review it was error. (*Id.* at PageID #: 31).

Mr. Szakal authored a "Physical Medical Source Statement" on February 25, 2021. (*See id.* at Ex. 14F). He diagnosed Claimant with "lumbar spine pain" and gave him a "fair" prognosis. (*Id.* at PageID #: 555). Then he provided the following sitting, walking, and standing limitations: up to 120 minutes sitting at a time; up to ten minutes standing at a time; can stand/walk up to two total hours a day; can sit at least six total hours a day; requires periods of walking for five minutes every hour. (*Id.* at PageID #: 556). Dr. Szakal also recommended lifting and carrying restrictions: occasionally lifting and carrying less than ten pounds; rarely lifting and carrying ten or twenty pounds; and never lifting or carrying fifty pounds. (*Id.* at PageID #: 557). He opined Claimant was capable of a low stress work environment but would be off task up to twenty percent of the day and absent about three days a month. (*Id.* at PageID #: 557–58).[2]

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity since October 4, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: disorders of the back; obesity; anxiety disorder; and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and

---

[2] While Mr. Szakal provided additional limitations, these are the most significant.

416.967(b) except can frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently kneel, crouch, or crawl; can understand, remember, and carry out simple and occasional complex instructions in a routine setting with few changes; can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace, the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others, and the occupation does not require tandem work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 10, 1983 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 4, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at PageID #: 51, 52, 53, 59, 60).

## V.   The Appeals Council's Decision

The Appeals Council made the following findings relevant to this appeal:

1. The claimant met the special earnings requirements of the Act on October 4, 2018, the date the claimant stated he became unable to work, and continues to meet them through December 31, 2023. The

claimant has not engaged in substantial gainful activity since October 4, 2018.

2. The claimant has the following severe impairments: disorders of the back; obesity; anxiety disorder; and depressive disorder, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. The claimant's anxiety disorder and depressive disorder resulted in no limitations in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or manage oneself.

3. The claimant's combination of impairments results in the following limitations on his ability to perform work-related activities: he could perform work at the light exertional level, but could only occasionally climb ladders, ropes, or scaffolds and frequently climb ramps or stairs, kneel, crouch, or crawl. He was able to understand, remember, and carry out simple and occasional complex instructions in a routine setting with few changes. He could respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace; the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others; and the occupation does not require tandem work. In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the light exertional level.

4. The claimant's alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the body of this decision.

5. The claimant is unable to perform past relevant work as shearing machine operator, security guard, field worker because of his combination of mental and physical limitations.

6. The claimant is 38 years old, which is defined as a younger individual, and has a high school education. The claimant's past relevant work is semiskilled or skilled. The issue of transferability of work skills is not material in view of the claimant's age and residual functional capacity.

7. If the claimant had the capacity to perform the full range of the light exertional level, CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's

exertional and non-exertional impairments do not allow him to perform the full range of the light exertional level, using the above-cited Rule as a framework for decision-making, there are a significant number of jobs in the national economy which he could perform. Based on the testimony of the vocational expert at the hearing, which is consistent with the information contained in the Dictionary of Occupational Titles (DOT) pursuant to Social Security Ruling 00-4p, the claimant was able to perform the requirements of the following representative light, unskilled occupations:

- Janitor, DOT 381.687-030, with approximately 137,000 jobs in the national economy;

- Hand sorter, DOT 529.687-186, with approximately 100,000 jobs in the national economy; and

- Protective clothing issuer, DOT 222.687-046, with approximately 68,000 jobs in the national economy. These jobs exist in significant numbers in the national economy. Therefore, the claimant was not disabled under the framework of Medical-Vocational Rule 202.21.

8. The claimant is not disabled, as defined in the Social Security Act, at any time from the alleged onset date of October 4, 2018 through March 17, 2021, the date of the Administrative Law Judge's decision.

(*Id.* at PageID #: 35–36).

## VI.    Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.  Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to SSI or DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

**C.  Discussion**

Claimant raises two assignments of error on appeal. However, he alleges a number of sub-claims within each argument which the Court will address below.

### 1.  Opinions

Claimant challenges the ALJ's and Appeals Council's ("AC") review of opinions authored by Mr. Kalina and Mr. Szakal. While he levels specific arguments against the treatment of each opinion, Claimant also argues that the ALJ and AC "failed to address the contrary evidence establishing support and consistency" or "give a coherent explanation . . . . of the opinions' supportability, consistency, and persuasiveness." (ECF No. 10, PageID #: 576 (citing *Russ v. Comm'r of Soc. Sec.*, No. 1:20cv1838, 2021 WL 3709916, at *9 (N.D. Ohio Aug 20, 2021); *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *10 (N.D. Ohio Dec. 11, 2020))). Finally, he argues the ALJ and AC failed to build logical bridges between the expert opinions and their findings. (*Id.* at PageID #: 576–77). The Commissioner maintains that substantial evidence supports the ALJ's and AC's credibility findings. (ECF No. 12, PageID #: 593–95).

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017.[3] *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." § 404.1520c(a).

An ALJ must still "articulate how [she] considered the medical opinions and prior

---

[3] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by section 404.1520c for claims filed on or after March 27, 2017, such as here.

administrative medical findings" in adjudicating a claim. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s) but generally is not required to discuss other factors. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in section 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

### a.  Mr. Kalina

The ALJ and AC found Mr. Kalina's February 2021 opinion unpersuasive. (ECF No. 7, PageID #: 33, 58). Claimant argues that these findings are "contrary to the record" since Mr. Kalina's opinion was supported by and consistent with it. (ECF No. 10, PageID #: 571–72). The Commissioner responds that substantial evidence supports the ALJ's finding despite their failure to explicitly use the term "supportability" in their analysis. (ECF No. 12, PageID #: 595–96). The Commissioner argues that this was not required and that the ALJ still reviewed this factor when they noted earlier in their opinion that Mr. Kalina reported Claimant was "normal" in many areas of his mental status exam. (*Id.* (citing ECF No. 7, PageID #: 55; *Pifer v. Comm'r of Soc. Sec.*, No. 21-314, 2022 WL 1521911, at *11 (N.D. Ohio, May 13, 2022))).

Mr. Kalina completed a mental impairment questionnaire on February 22, 2021. (*See* ECF No. 7, PageID #: 509–10). The ALJ summarized the opinion in their decision:

> He completed a mental impairment questionnaire noting that the claimant is unable to meet competitive standards in most of the mental functioning categories, and checking boxes in "no useful ability to function" in a variety of categories. He noted that the

claimant would be absent from work 3-4 days per week, and off-task 75% of the workday. (See 12F).

(*Id.* at PageID #: 58). They also explained why they found the opinion unpersuasive:

> These extreme limitations are inconsistent with the record. although exams noted the claimant as depressed and dealing with anger issues, mental status exams were generally normal noting normal thought content, proper orientation, and no attention/concentration issues. Additionally, Mr. Kalina notes that he began treating the claimant from December 8, 2020, giving him less than three months of a treating relationship with the claimant. For these reasons, this form is unpersuasive.

(*Id.* at PageID #: 58).

The AC adopted the ALJ's finding for the following reasons:

> because the extreme limitations are inconsistent with the record; although exams noted issues with depression and dealing with anger issues, mental status exams were generally unremarkable, noting normal thought content, proper orientation, and no attention/concentration issues. Additionally, Mr. Kalina notes that he treated the claimant on a weekly basis between January 17, 2020 and February 21, 2020, and began treating him again on a biweekly basis on December 8, 2020, giving him only about three months of a treating relationship with the claimant at the time the form was completed. For these reasons, this form is unpersuasive.

(*Id.* at PageID #: 33).

The Court agrees that substantial evidence supports the ALJ's credibility determination since they provided adequate rationale for why Mr. Kalina's opinion was unsupported and inconsistent with the record. First, the ALJ noted that Mr. Kalina's "extreme limitations" were inconsistent with the record, which demonstrated "generally normal" mental status exams. (*Id.* at PageID #: 58). They specifically referenced Claimant's "normal thought content, proper

14

orientation, and no attention/concentration issues," despite noting depression and anger.[4] (*Id.*). The ALJ also discussed these notes during its prior review of the medical evidence. (*See id.* at PageID #: 55). Finally, they noted that Mr. Kalina established a treating relationship with Claimant less than three months before he authored his opinion. (*Id.* at PageID #: 58).[5]

Although the ALJ did not explicitly use the word "supportability" in their review of the opinion, this is not an error. *See Dallas v. Comm'r of Soc. Sec.*, 2021 WL 5428827, at *12 (N.D. Ohio Oct. 26, 2021) (finding that the ALJ complied with section 404.1520c despite falsely labeling their supportability analysis as "consistency"), *report and recommendation adopted*, 2021 WL 5416718 (N.D. Ohio Nov. 19, 2021). The ALJ reviewed the supportability of the opinion when they discussed Mr. Kalina's medical notes from January 2020, which demonstrated "normal" demeanor, behavior, cognition, memory, judgment, mood, speech, and thought content and process. (ECF No. 7, PageID #: 58). In the record, Claimant also denied suicidal ideation. (*Id.* at PageID #: 55 (citing PageID #: 382)). Although this was earlier in their opinion, they again referenced the contradictory records in their review of the opinion itself. Thus, the ALJ built a logical bridge between the opinion and their finding, and substantial evidence supports the determination.[6]

---

[4] The Court notes that Claimant makes a cursory argument that the ALJ failed to address contrary evidence that supported the opinion. (ECF No. 10, PageID #: 576). However, the ALJ's reference to Claimant's reported depression and anger demonstrates that they also considered this evidence as well. (ECF No. 7, PageID #: 58).

[5] In his reply brief, Claimant attacks the ALJ's statement that "Mr. Kalina notes that he began treating the claimant from December 8, 2020, giving him less than three months of a treating relationship with the claimant." (ECF No. 14, PageID #: 607). Claimant points out that the opinion notes he met with Claimant for about a month in early 2020. (*Id.*). Even assuming Claimant is correct, and the ALJ incorrectly stated the length of treatment, they were only off by one month, and this was not the only reason for discounting the opinion.

[6] The Court accordingly rejects Claimant's argument that the ALJ and AC failed to provide adequate explanations of their rationale, as in *Russ* and *Lester*. (*See* ECF No. 10, PageID #: 576 (citing 2021 WL 3709916 at *9; 2020 WL 8093313 at *10)).

Claimant's argument that Mr. Kalina's opinion is supported and consistent with the record is unpersuasive since he merely highlights that there may be substantial evidence to support an alternative conclusion. This is not enough to disturb the ALJ's finding. As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

Substantial evidence supports the ALJ's finding that Mr. Kalina's opinion is unpersuasive. Thus, this Court will not disturb the decision.

### b.  Mr. Szakal

Claimant also challenges the Appeal Council's treatment of Mr. Szakal's opinion. (*See* ECF No. 10, PageID #: 573–76). While the ALJ did not review the opinion, the AC considered it. (*See* ECF No. 7, PageID #: 31). In addition to the general arguments Claimant lobs against the opinion findings, he specifically argues the AC discounted Mr. Szakal's opinion because they erroneously found that the opinion did not include treatment records. (ECF No. 10, PageID #: 573). However, Claimant contends that the expert completed an initial evaluation for physical therapy, including a personal examination of Claimant, which the AC overlooked. (*Id.*). The Commissioner responds that the AC's finding is supported by substantial evidence and that they adequately reviewed the opinion's supportability and consistency, under section 404.1520c. (ECF No. 12, PageID #: 594).

While the ALJ did not review Mr. Szakal's opinion, the AC discussed the record and its rationale for finding it unpersuasive:

> The Appeals Council has considered the February 25, 2021 medical source statement from Tom Szakal, PT and has admitted it into the record as Exhibit 14F. However, this statement does not specify the frequency and length of contact Mr. Szakal had with the claimant, and the record does not contain any treatment records from Mr. Szakal; therefore, the nature of his relationship with the claimant and the extent of his familiarity with the evidence related to the claimant's functioning is unclear. Additionally, the statement is unsupported because it specifies significant manipulative and other limitations but indicates only lumbar spine pain as a diagnosis, which would not reasonably provide a basis for such limitations. The statement also does not specify when the assessed limitations began, or the duration for which they would reasonably be expected to last. The assessed limitations are inconsistent with medical evidence including a September 2020 consultative examination revealing unremarkable findings other than dorsolumbar tenderness, including intact strength and sensation, no gait or manipulative issues, generally intact range of motion, and only mild findings on lumbar imaging (Exhibits 5F and 6F). They are also inconsistent with treatment records showing only conservative treatment with physical therapy and medication, with no recommendation for surgical intervention; mild findings on lumbar imaging; and generally unremarkable examination findings from treating providers including generally normal gait, strength, and sensation (Exhibits 7F; 8F; 9F; and 10F). Furthermore, the statement opines on issues such as the claimant's ability to tolerate work stress, time off-task due to interference with attention and concentration, and psychological issues of agoraphobia and anxiety that are outside of Mr. Szakal's area of qualification and practice as a physical therapist. Overall, after considering all of the factors specified in 20 CFR 404.1520c and 416.920c, the Appeals Council finds that Mr. Szakal's statement is not persuasive, and that it does not provide a basis for changing any of the Administrative Law Judge's findings. Therefore, the Appeals Council adopts the Administrative Law Judge's findings, and finds that the claimant was not under a disability from October 4, 2018 through March 17, 2021.

(ECF No. 7, PageID #: 31).

Here, the AC reviewed the supportability of Mr. Szakal's restrictions, finding them unsupported by his overall opinion. It noted that the opinion recommended "significant

manipulative and other limitations" despite only listing lumbar spine pain as a diagnosis. (*Id.*). The AC found that this single diagnosis did not support Mr. Szakal's strict limitations. (*Id.*). Additionally, it noted that the opinion failed to indicate when such limitations became necessary or how long they might last. (*Id.*).

The AC next noted that the opinion was inconsistent with the medical record. (*Id.*). It contrasted Mr. Szakal's strict limitations with a September 2020 exam which revealed "unremarkable" findings, aside from dorsolumbar tenderness. (*Id.* (citing Exs. 5F, 6F)). Because Claimant exhibited "intact strength and sensation, no gait or manipulative issues, generally intact range of motion, and only mild findings on lumbar imaging," as well as "mild findings on lumbar imaging; and . . . generally normal gait, strength, and sensation," the AC found the opinion inconsistent with the record. (*Id.* (citing Exs. 7F, 8F, 9F, 10F)). It also noted that Dr. Szakal's strict recommendations were inconsistent with Claimant's generally conservative course of treatment which included "only" physical therapy and medication, rather than surgical intervention. (*Id.*). Based on the Court's review of the record, it finds that substantial evidence supports the AC's findings related to the supportability and consistency of the opinion.

The AC also considered other section 404.1520c factors, including provider expertise. It noted that Mr. Szakal's statements related to Claimant's stress, attention, concentration, and psychological issues were outside of his expertise in physical therapy. (*Id.*). Based on the AC's discussion of at least three section 404.1520c factors, it built a logical bridge between the opinion and its finding.

Finally, the AC discounted the opinion because it did not "specify the frequency and length of contact Mr. Szakal had with the claimant, and the record does not contain any treatment records from Mr. Szakal." (*Id.*). Claimant specifically challenges the AC's finding that the record did not

include treating documents from Mr. Szakal. (ECF No. 10, PageID #: 573). Exhibit 8F includes a two-page medical record from Claimant's "initial evaluation for lumbar spine pain" with Mr. Szakal, dated January 28, 2021. (ECF No. 7, PageID #: 448–49).

As Claimant points out, the AC's statement that "the record does not contain any treatment records from Mr. Szakal" is incorrect. However, it was harmless since the AC provided additional reasons for discounting the opinion, and Exhibit 8F is consistent with its point that the record demonstrates generally normal health. For example, the exhibit identifies Claimant's "active problems" as limited to benign hypertension and lumbar spine pain. (*Id.* at PageID #: 448). The record also notes Claimant "was able to complete today's treatment with ease" and exhibited "normal" gait, 5/5 bilateral hip abduction and adduction strength, and "fair" abdominal strength. (*Id.* at PageID #: 449). Claimant appears to argue that the record included two diagnoses the ALJ and AC should have considered: disc bulging at L5-S1 and a T9 fracture. (*See* ECF No. 10, PageID #: 573). However, the ALJ referenced the disc bulging at L5-S1 several times throughout their opinion, as well as Claimant's T9 fracture. (*See* ECF No. 7, PageID #: 54–56 (citing Exs. 1F, 6F, 8F)). This demonstrates that the ALJ and AC considered the diagnosis in their review of the treatment records. In other words, even without this reason for discounting the opinion, the AC provided adequate rationale for finding the opinion unpersuasive, and substantial evidence supports their determination.

To the extent Claimant argues the AC's misstatement was harmful error requiring remand, this argument fails. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F. 3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F. 3d

19

742, 746 (6th Cir. 2007)). Here, the AC's misstatement neither precluded it from following section 404.1520c in reviewing the opinion nor prejudiced Claimant since the information in the document was consistent with the ALJ's and AC's summaries of the record. Thus, the AC's error in misstating the existence of the record was harmless.

As discussed above, Claimant's recitation of various records that support Mr. Szakal's opinion is unpersuasive. (*See* ECF No. 10, PageID #: 573–74). As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Wright*, 321 F.3d at 614 (quoting *Key*, 109 F.3d at 273); *see Buxton*, 246 F.3d at 772 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted). Accordingly, the Court will not disturb the AC's determination.

### 2. RFC

Claimant challenges the ALJ's and AC's RFC review. (ECF No. 10, PageID #: 580). He first argues they failed to properly consider his subjective complaints, including allegations of pain. (*Id.* at PageID #: 581). Next, Claimant argues that this case needs to be remanded to reconcile "inconsistencies between the opinions of the reviewing psychologists and the RFC" and to "determine whether sufficient jobs exist in the national economy that a person who needed . . . a solitary setting without . . . close consistent attention could perform." (*Id.* at PageID #: 582).[7]

---

[7] Claimant also made a cursory argument that the ALJ and AC "failed to consider the combination of [his] impairments." (ECF No. 10, PageID #: 580). The Court promptly rejects this argument. The ALJ's decision is replete with the references to Claimant's pain, lower back complications, mental health, and obesity, as well on their effect on Claimant's daily activities. (*See* ECF No. 7, PageID #: 54–59). Thus, the ALJ considered these impairments in combination with each other throughout their opinion, and Claimant's argument fails.

The Commissioner argues that substantial evidence supports the ALJ's review of the Plaintiff's symptoms, including pain. (ECF No. 12, PageID #: 599–600). In response to Claimant challenges against the consultants, the Commissioner contends that the ALJ was not required to adopt their verbatim recommendations and that substantial evidence supports the ALJ's decision to adopt other restrictions. (*Id.* at PageID #: 597–98). Although Claimant appears to challenge the ALJ's Step Five finding, the Commissioner maintains that this is an RFC challenge. (*Id.* at PageID #: 597 n.3).

### a.  Subjective allegations of pain

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and

any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Claimant argues that "neither the ALJ nor the AC properly evaluated the medical evidence and made a defensible determination as to whether [Claimant's] testimony was credible." (ECF No. 10, PageID #: 581). Claimant's subjective allegations primarily center around his alleged pain.

The ALJ specified Claimant's subjective complaints:

> The claimant testified at the hearing that he is unable to work as his body cannot handle it anymore. He noted that he cannot even kick a soccer ball. He does physical therapy exercises at home. He is taking medications for the pain. He noted that the medications help a little bit. He noted that taking a shower is difficult because of the standing. He noted difficulty with anxiety and staying focused. He does not like to be out in public or around others. He cooks, but sometimes forgets that he is cooking and will burn food. (See Hearing Testimony). The claimant completed a Function Report noting that his anxiety keeps him from being near people. He noted that he had a fractured spine, which causes daily back pain. During the day, he watches TV and plays video games. He takes care of his son. He takes care of his personal care, but noted that he does not perform them as often as he should. He prepares his own meals. He noted that he needs reminders to take medications. He completes laundry. He can drive a car and can go out alone. (See 3E).

> [. . .]

> The claimant testified at the hearing that he is unable to work as his body cannot handle it anymore. He noted that he cannot even kick a soccer ball. He does physical therapy exercises at home. He is taking

> medications for the pain. He noted that the medications help a little
> bit. He noted that taking a shower is difficult because of the
> standing. He noted that he had a fractured spine, which causes daily
> back pain.

(ECF No. 7, PageID #: 54, 58). The ALJ also explained why they discounted the severity of the

allegations and adopted their RFC:

> As for the claimant's statements about the intensity, persistence, and
> limiting effects of his symptoms, they are only partially consistent
> with both the objective and subjective evidence of record, because
> the treatment notes do not show the serious symptoms and
> dysfunction that would be expected were the claimant as limited as
> alleged.
>
> [. . .]
>
> These subjective allegations, as well as the imaging showing
> degenerative changes of the lumbar spine, support the less than light
> level listed above. However, a more limited physical RFC is not
> supported. The MRI of the lumbar spine noted only mild
> degenerative changes. On exam, his gait was normal and steady. He
> does not need an assistive device for ambulation. The claimant
> appears stable at station. The claimant's hearing appears to be
> adequate for normal conversation. Examination of the hands reveals
> no tenderness, redness, warmth or swelling. Examination of
> evidence of the cervical spine reveals no tenderness over the spinous
> process. Examination of the dorsolumbar spine revealed normal
> curvature. There was no evidence of paravertebral muscle spasm.
> There was tenderness to percussion of the dorsolumbar spinous
> processes. Straight leg raise test was negative on both sides supine
> and seated.

(*Id.*).[8]

The  ALJ  discussed  Claimant's  pain  allegations  at  length.  (*See id.*  at  PageID  #:  54–

58). They noted that in September 2018, Claimant chief complaint was back pain radiating from

---

[8] To the extent Claimant attempts to argue the ALJ failed to adequately consider his mental health allegations, this argument is deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

the mid to lower back, which allegedly began after a compression fracture in at the T9 spinal disc. (*Id.* at PageID #: 54–55). The pain also radiated from the back to the left leg. (*Id.* at PageID #: 55). The ALJ observed that by January 2020, Claimant did not display atrophy, and his peripheral joint range of motion was full and pain free. (*Id.*). In a February 2021 record, the ALJ found that Claimant experienced painless motion in both hips with intact strength in his lower extremities. (*Id.* at PageID #: 57). The provider recommended a nonsurgical approach including exercise, weight reduction, and smoking cessation. (*Id.*). The ALJ also noted the results of an MRI of Claimant's lumbar spine, a source of his pain:

> It noted the following: at T2- L1: There is no significant central canal or neural foraminal stenosis. L1-2: There is no significant central canal or neural foraminal stenosis. L2-3: There is no significant central canal or neural foraminal stenosis. L3-4: There is no significant central canal or neural foraminal stenosis. L4-5: There is no significant central canal or neural foraminal stenosis. L5-S1: Minimal disc bulging does not narrow the central canal. There is at most minimal neural foraminal encroachment. There is very subtle curvilinear hyperintensity on T2 weighted imaging along the left lateral/intraforaminal margin of the disc suggestive of an annular fissure. The prevertebral and posterior paraspinous soft tissues are unremarkable. The impression was minimal degenerative changes of L5-S1. (8F/1).

(*Id.* at PageID #: 55–56).

The ALJ also noted that Claimant took medication to reduce pain and reviewed relevant records throughout the period at issue. (*See id.* at PageID #: 54–56). For instance, the ALJ noted that in September 2018, Claimant reported to his provider that various medications did not provide relief, including cyclabenzaprine, meloxicarn, napraxen, and ibuprofen. (*Id.* at PageID #: 55 (citing 1F)). By January 2021, they found that a provider noted that while past medication did not significantly reduce Claimant's pain, he did not require an assistive walking device or assistance walking, sitting, or standing. (*Id.* at PageID #: 56 (citing Ex. 9F)). However, the ALJ noted that

Claimant testified at the administrative hearing that he continued to take medications and that they reduced his pain. (*Id.* at PageID #: 54).

The ALJ also considered Claimant's daily activities and how pain impacted them. They noted that Claimant testified that he watches television, plays video games, cares for his son, prepares meals, completes laundry, and drives a car. (*Id.*). In a September 2018 record, the ALJ noted that Claimant alleged his pain interfered with his ability to care for his son. (*Id.* at PageID #: 55).[9]

In discounting Claimant's allegations of pain, the ALJ provided several reasons for their determination. First, they noted that the MRI showed "only mild degenerative changes" and observed that Claimant's gait was steady upon examination and that he did not require an assistive device to walk. (*Id.* at PageID #: 58). Next, they noted that Claimant's cervical spine revealed no tenderness, that his dorsolumbar spine exhibited normal curvature, and that there was no evidence of paravertebral muscle spasm. (*Id.*). Additionally, the ALJ found that Claimant's straight leg raise rest was negative and both sides were supine and seated. (*Id.*). Despite Claimant's allegations the ALJ only provided a "boilerplate" rationale for rejecting his testimony, the reasons stated above demonstrate this is untrue. (*See* ECF 10, PageID #: 581). Moreover, Claimant does not challenge any of these findings, and the Court finds that substantial evidence supports the ALJ's determination.

### b.  State agency consultants

---

[9] Claimant makes a passing argument that the ALJ and AC improperly concluded he was not disabled due to his ability to conduct activities of daily living. (ECF No. 10, PageID #: 580 (citing *Lorman v. Comm'r of Soc. Sec.*, 107 F. Supp. 3d 829, 838 (S.D. Ohio 2015); *Aubin v. Comm'r of Soc. Sec.*, No. 1:20-CV-02206, 2022 WL 138080, at *12 (N.D. Ohio Jan. 14, 2022))). But this mischaracterizes the record. Daily activities were only one factor the ALJ reviewed, and it is not dispositive. Since the ALJ reviewed several factors, including treatment history and medication, substantial evidence supports their overall finding, even if activities are excluded.

Claimant finally challenges the ALJ's decision not to include the state agency consultant's limitations in the RFC. The ALJ summarized the consultants' opinions:

> They opined that the claimant would be capable of a less than medium exertional level (See 4A and 8A). . . . Mentally, they opined that the claimant can interact with others in a work setting on a limited, brief and superficial basis. He can adapt to infrequent changes in routine that are introduced gradually, in a setting without high production goals or quotas. (See 4A and 8A).

(ECF No. 7, PageID #: 57–58). Then they explained why they found these recommendations unpersuasive:

> [The physical exertional level] is inconsistent with the record, which notes the claimant's continued subjective pain allegations. Additionally, an MRI of the lumbar spine noted degenerative changes. However, those changes were noted to be mild, and exams noted normal muscular strength. This supports the current less than light exertional level above. . . . [The mental restrictions are] somewhat consistent with the record; however, a more limited mental RFC is warranted by the record. mental exams noted the claimant was depressed and attempting to control his anger, supporting more limited social interactions as well as adaptation capacities, as noted above. While the state agency consultants have program knowledge, they lack supportability with the record.

(*Id.*).

Claimant is not challenging the ALJ's finding that the opinions were unpersuasive, but rather, their decision not to adopt the consultants' recommendation that Claimant "need[s] to work in a solitary setting not requiring him to sustain close consistent attention to detail nor to sustain a consistent fast pace." (*See* ECF No. 10, PageID #: 581–82). Instead of adopting this restriction, the ALJ used the following limitation:

> [C]an respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace, the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others, and the occupation does not require tandem work.

26

(ECF No. 7, PageID #: 53).

This was not in error, as the ALJ was not required to adopt restrictions from a rejected opinion. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (noting that an ALJ is not required to adopt each restriction of an expert to which it gave great weight). The ALJ found that Claimant required a "more limited mental RFC" than the consultants recommended and clearly denoted why it did not include the consultants' limitations in the RFC. (*See* ECF No. 7, PageID #: 57–58). The ALJ therefore did not err in failing to adopt the recommended restriction, and substantial evidence supports their decision. Accordingly, the Court finds no reason to disturb the ALJ's or AC's decisions in this matter.

## VII.    Conclusion

Based on the foregoing, it the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

**IT IS SO ORDERED.**

Dated: August 24, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE